546 P.2d 354

**PIMA COUNTY PUBLIC FIDUCIARY, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, FOR PIMA COUNTY, the Honorable Commissioner William N. Sherrill, a Commissioner therefor, and Arturo GALAVIZ, the Real Party in Interest, Respondent.**

No. 2 CA–CIV 2088.

Court of Appeals of Arizona, Division 2.

Feb. 27, 1976.

Ganson, Powell & Hays by Eugene H. Hays, Tucson, for petitioner.

George Haskel Curtis, Tucson, for real party in interest.

OPINION

HATHAWAY, Judge.

A permanent injunction restraining petitioner from voluntarily admitting his ward to the Arizona State Hospital or other mental health treatment agency, unless and until appropriate petitions and hearings are held pursuant to the provisions of A.R.S. Title 36, Chap. 5, is challenged in this special action. Since the particular circumstances of this case indicate that the reme-

**86**

dy by appeal is inadequate, we assume jurisdiction.

Petitioner was appointed conservator and guardian of Mr. Galaviz, an incapacitated and protected person, on March 24, 1975. The appointment was accepted and letters of guardianship and conservatorship were issued the same day. Mr. Galaviz was placed in a nursing home which, because of his unmanageability, demanded that he be moved. He was transferred to the Pima County Hospital and after his examination by the county examiner, it was recommended that petitioner admit him into the state hospital. With petitioner's consent, all administrative procedures were accomplished in order to place the ward in the state hospital. Petitioner thereupon notified the duly appointed guardian ad litem of his intention. The guardian ad litem sought injunctive relief challenging petitioner's placement of his ward in the state hospital without the consent of the ward. The respondent court granted the relief and made the following conclusions of law:

"1. To interpret A.R.S. §§ 14–5209(3), 14–5312[A](3), and 36–518(b), to mean that a guardian may place his ward in the Arizona State Hospital or other mental health treatment agency against the consent of the ward would be a denial of due process of law and equal protection of the law in the light of the provisions of A.R.S. Title 36, Chapter 5, which provides for hearings and determination by the Court by clear and convincing evidence before a person can be hospitalized in a mental health treatment agency against his will.

2. In interpreting A.R.S. § 36–518(b), relative to voluntary admissions, consideration must be given to In re Sherrill's Estate, 92 Ariz. 39, 43; 373 P.2d 353, which holds:

'That one is under guardianship does not prevent him from performing the acts of which he is in fact capable * * *.'

Therefore, if a person under guardianship is capable of making a decision to be admitted to a mental health treatment agency, his guardian must also sign the appointment. However, such statute cannot be interpreted to allow the guardian to 'voluntarily' admit his ward. To do so, if the ward is not capable of making the decision, would be a denial of equal protection of the law and due process of law as provided in both the Arizona and U.S. Constitutions. 'Voluntary' as used in A.R.S. § 36–518(b) must refer to the voluntary act of the ward and not the voluntary act of the guardian."

A.R.S. § 14–5312 confers upon the guardian of an incapacitated person the same powers, rights and duties respecting his ward that a parent has respecting his unemancipated minor child with one exception not applicable here. He is empowered to authorize medical or other professional care, treatment or advice, A.R.S. § 14–5209(3), and to give any consents or approvals necessary to receive such care. A.R.S. § 14–5312(A)(3).

Title 36, Chapter 5, Article 3, provides for voluntary admission to a mental health agency. A.R.S. § 36–518 provides:

*"Application for voluntary admission; admission to agency; minors and persons under guardianship; transportation*

A. Pursuant to rules and regulations of the department, any person may be hospitalized for evaluation, care and treatment who voluntarily makes written application on a prescribed form. The agency to which the person applies may accept and admit the person if the medical director of the agency or the admitting officer believes that the person needs evaluation or will benefit from care and treatment of a mental disorder or other personality disorder or emotional condition in the agency.

B. If the person making voluntary application is under guardianship, the application shall be signed by the guardian. If the person is less than eighteen years of age, the application shall be signed by the parent, guardian or adult next of kin. If the minor is fourteen years of age or older and not under guardianship, the written application shall also be signed by the minor. In any other written application for a voluntary admission of a minor by a parent, guardian or adult next of kin, the person shall be admitted only upon the written approval of the medical director of the agency.

C. The board of supervisors of the county of residence of a person who has submitted an application for admission to the state hospital pursuant to subsection A shall provide transportation to the state hospital for the person if it appears that the person is eligible for voluntary admission to the state hospital after consultation between the state hospital and an examiner of the person designated by the county to provide such services."

We agree that the only interpretation of A.R.S. § 36–518, supra, which will pass constitutional muster is the one given to it by the respondent court. In other words, if, as petitioner contends, a guardian may commit his ward to a mental health institution without the ward's consent, the constitutional guarantee of procedural due process would be violated.

It is the fundamental law of the land that a person is not to be deprived of his liberty, whether by involuntary hospitalization or some other kind of incarceration, without due process of law. We believe the rationale of *Bartley v. Kremens*, 402 F.Supp. 1039 (E.D.Pa.1975) is applicable here. In *Bartley*, provisions of the Pennsylvania Mental Health and Mental Retardation Act, providing for the voluntary admission or commitment of persons 18 years of age or younger by a parent, guardian or individual standing in loco parentis to the person to be admitted were declared unconstitutional. The court held that a parent may not effectively waive personal rights of a child when the child objects to the waiver. Acknowledging that in most instances parents, acting for the child, in the child's best interests, properly guide, protect, and control their children, it stated:

" . . . and if we could find that in all instances parents act in the best interest of their children, we might also find that parents may waive constitutional rights of their children. Unfortunately, as such a graphic example as parental child abuse illustrates, this is not the case. In deciding to institutionalize their children, parents, as well as guardians ad litem or persons standing in loco parentis may at times be acting against the interests of their children." (footnotes omitted) 402 F.Supp. at 1047–48.

In summary, the court held that before children could be institutionalized, they were entitled to (1) a probable cause hearing within 72 hours from the date of initial detention; (2) a postcommitment hearing within 2 weeks from the date of initial detention; (3) written notice, including the date, time and place of the hearing, and a statement of the grounds for the proposed commitment; (4) counsel at all significant stages of the commitment process and if indigent, the right to appointment of free counsel; (5) be present at all hearings concerning the proposed commitment; (6) a finding by clear and convincing proof of the need for institutionalization; and (7) the right to confront and cross-examine witnesses against them, to offer evidence in their own behalf, and to offer testimony of witnesses. (402 F.Supp. at 1053).[1]

It appears that the Pennsylvania Act contained provisions similar to our A.R.S. § 36–518 and § 36–519 as to requiring the

---

1. The court carefully pointed out, however, that with the exception of the right to notice and counsel, any and all of these rights might be waived by the child and such waiver could be accepted by the court upon approval by the child's counsel and upon a finding that the child understood his rights and was competent to waive them.

concurrence of two independent medical opinions as to institutionalization. Also, in order to continue institutionalization of a juvenile 13 years of age or older, over his objection, if the director deemed further institutionalization necessary, the involuntary civil court commitment procedure had to be followed. Although the majority of the court apparently did not consider this sufficient protection, the dissenting member of the court was of the opinion that this "protective procedure" satisfied the elusive concept of due process.

The California Welfare and Institutions Code, § 6000, provides for admission to a state mental hospital upon receipt of a written application for admission. As to adults, it states:

"(a) In the case of an adult person, the application shall be made voluntarily by the person, at a time when he is in such condition of mind as to render him competent to make it or, if he is a conservatee with a conservator of the person or person and estate who was appointed under Chapter 3 (commencing with Section 5350) of Part I of Division 5 with the right as specified by court order under Section 5328 to place his conservatee in the state hospital, by his conservator."[2]

Chapter 3 (Section 5350 et seq.) deals with conservatorship for gravely disabled persons. Section 5358 provides for the placement of a conservatee in a hospital or other facility:

"A conservator appointed pursuant to this chapter shall have the right, if specified in the court order, to place his conservatee in a medical, psychiatric, nursing, or other state-licensed facility . . ."

2. The reference to Section 5328 is apparently an error. Section 5328 deals only with the confidentiality of information obtained in pro-

Thus we see that under the California statutes the conservator's authority to apply for admission derives from prior judicial approval and a determination that a person was "gravely disabled as a result of mental disorder or impairment by chronic alcoholism." (Section 5350).

■ Petitioner's ward was adjudicated an incapacitated person (defined in A.R.S. § 14–5101(1) as "any person who is impaired by reason of mental illness, mental deficiency, mental disorder, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication or other cause, except minority, to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person"). He therefore was not competent to make an application for admission to the state hospital and could not make a voluntary application under A.R.S. § 36–518. The respondent court was correct in ruling that resort to the statutory procedure for involuntary commitment was required.

■ We hold, therefore, in order to preserve its constitutionality, as is our duty, that A.R.S. §. 36–518 does not authorize a "voluntary admission" by the guardian of an incapacitated person. While we have no doubt as to petitioner's good intentions in seeking treatment for his ward, the tenets of due process would be violated by petitioner's construction of A.R.S. § 36–518. See In re Michael E., 15 Cal.3d 183, 123 Cal.Rptr. 103, 538 P.2d 231 (1975).

For the foregoing reasons, relief is denied.

HOWARD, C. J., and KRUCKER, J., concur.

viding services and the reference was undoubtedly intended to be to Section 5358.