955 P.2d 977

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,** Appellant,

v.

**CIANA H., Appellee.**

**No. 1 CA–JV 97–0163.**

Court of Appeals of Arizona, Division 1, Department D.

March 19, 1998.

As Amended July 1, 1998.

Grant Woods, Attorney General by Kimberly D. Halbig–Sparks, Assistant Attorney General and William W. Owsley, Assistant Attorney General, Phoenix, for Appellant ADES.

Dean W. Trebesch, Maricopa County Public Defender by Suzanne Heiler, Deputy Public Defender and Joel Martin Glynn, Deputy Public Defender, Phoenix, for Appellee Minor Child.

Law Offices of Terrie Perkins by Terrie L. Perkins, Phoenix, for Guardian ad Litem for Minor Child.

## OPINION

VOSS, Judge.

¶ 1 Appellant Arizona Department of Economic Security (DES) appeals from the juvenile court's order placing appellee Ciana H. (the juvenile) in the physical custody of Mingus Mountain Estates and ordering DES to share with the juvenile court the cost of such placement.[1] The primary issue on appeal is whether the court can order placement of a juvenile in a "mental health agency" as defined by A.R.S. § 8–201(20) without first complying with A.R.S. § 8–242.01.

## PROCEDURAL HISTORY

¶ 2 The juvenile, who was born October 6, 1981, was adjudicated incorrigible in February 1996. Since that time, the state had filed four petitions alleging delinquency and/or probation violation. The third such petition was filed on January 28, 1997, alleging that the juvenile had violated her probation by running away from home. The juvenile was still on runaway status at the time of the advisory hearing on February 5, 1997, and a warrant was issued. The juvenile was present at the warrant hearing on March 9, 1997; she admitted the probation violation at that time.

¶ 3 On March 13, 1997, the juvenile's guardian ad litem filed a dependency petition. *See* A.R.S. § 8–201(13)(a) (Supp.1997). The juvenile court set the initial dependency hearing for April 2, 1997, and ordered that the juvenile be made a temporary ward of the court committed to the care of DES.

¶ 4 At the disposition hearing on March 20, 1997 on the probation violation, the court placed the juvenile on intensive probation in the physical custody of DES. The juvenile violated that probation by running away the next day, and the state filed a petition alleging the probation violation on March 31, 1997. The juvenile admitted the violation at an advisory hearing on May 21, 1997.

¶ 5 On May 28, 1997, the juvenile was adjudicated dependent as to both parents.

¶ 6 Prior to the disposition hearing on the March 31st probation violation, the juvenile's guardian ad litem and her probation officer filed reports with the court. The guardian ad litem repeated her previous recommendation that the juvenile be placed in a locked facility "for her own protection."

> Counsel once again reiterates that this child needs treatment in a locked facility and needs it desperately before she dies of a drug overdose. . . . [The juvenile] has been using methamphetamines and other illegal substances on a daily basis at least since October of 1996.
>
> * * *
>
> . . . Under no circumstances should the child be released to anything other than a locked facility.

1. No answering brief having been filed in this matter, this appeal was submitted for decision on the record and the opening brief.

¶ 7 The juvenile's probation officer concurred in this recommendation:

> ... In my opinion, her record is not all indicative of the seriousness of her situation. [The juvenile] has been deeply involved in drug abuse since at least late 1995. She has been completely incorrigible at home and completely noncompliant with the Court's orders and attempts to provide her services.

Acknowledging that the juvenile scored only a "1" on the ADOJC risk assessment guidelines, the officer nonetheless concluded that the guidelines were not appropriate for the juvenile.

> In my opinion, [the juvenile] will need a period of approximately 18 months at Black Canyon School or a secure placement in order to effectively deal with her substance abuse problem and behavioral difficulties.

The officer concluded that, if DES could not place the juvenile in a secure-treatment facility, "then I see no other options but commitment."

¶ 8 On June 18, 1997, the court deferred the disposition hearing, and directed the DES caseworker "to locate, within 10 days, at least two or three locked facilities that will accept the juvenile."

¶ 9 At the disposition hearing on June 27th, the court stated:

> We had deferred this disposition, because we were looking for a locked facility for the Juvenile, but we wanted it through DES.
>
> I don't believe she qualifies for Black Canyon. So, I ordered DES to come up with some names of some secured facilities where we could place the Juvenile.

DES responded that it "has been unable to locate a facility that would accept the child."

> Any locked facility that the Department deals with would be a mental health facility pursuant to Title 36. This would require under [A.R.S. § 8–242.01], a psychiatric evaluation, which would indicate[ ] that the child is in need of behavioral health treatment.

> The reports that I have been able to review ... do not indicate any mental health difficulties, they simply indicate a substance abuse problem that this Juvenile has.
>
> The Department does not have secured facilities that would accept a child without a psychiatric evaluation indicating that the child is in need of that level of care on a psychiatric basis or mental health basis.

DES then went on that, in any event, only one mental health facility, Mingus Mountain Estate Residential Center, would even accept the juvenile without a prior psychiatric evaluation being done, but reiterated its objection to placement at Mingus Mountain:

> [T]his is a secured facility and it falls within the definition of a mental health treatment facility. Again, under ARS 242.01, it requires that this Court find that before placing a child in such facility, by clear and convincing evidence, that there are not available alternatives to inpatient treatment and that the child is in need of inpatient treatment.
>
> There is clearly no psychiatric evidence before this Court at this point in time, which would indicate that either one of those standards have been met. ...

¶ 10 Over DES' objection, the court without further discussion ordered that the juvenile be placed at Mingus Mountain, and that the cost for this placement be shared by DES and the juvenile court. DES also objected to this order on the basis that it should not have to share in the cost of a placement that did not comply with A.R.S. § 8–242.01. DES timely appealed.[2]

## DISCUSSION

¶ 11 Because this appeal involves legal issues requiring interpretation of statutes and application of those statutes to the juvenile court's actions, our review is *de novo*. *Arizona Dep't of Econ. Sec. v. Gerald F.*, 190

---

2. DES is an aggrieved party and has standing to appeal pursuant to A.R.S. § 8–236(A). *Arizona*

*Dep't of Econ. Sec. v. Gerald F.*, 190 Ariz. 190, 192, 945 P.2d 1321, 1323 (App.1997).

Ariz. 190, 196, 945 P.2d 1321, 1327 (App. 1997).[3]

## A. "Mental Health Agency"

■ ¶ 12 A.R.S. § 8–242.01 governs the admission of a child to a "mental health agency." *See* A.R.S. § 8–242.01(B). A "mental health agency" is defined by A.R.S. § 8–201(20) (Supp.1997) as meaning:

> any private or public facility which is licensed by this state as a *mental health treatment agency,* a psychiatric hospital, a psychiatric unit of a general hospital or a residential treatment center for emotionally disturbed children and which utilizes secure settings or mechanical restraints.

(Emphasis added.) Thus, the threshold issue is whether Mingus Mountain is a "mental health agency" such that A.R.S. § 8–242.01 is even triggered. *Cf. Gerald F.,* 190 Ariz. at 196–99, 945 P.2d at 1327–30 (holding that Florida-based comprehensive transition education program not a mental health agency so was not "within the purview" of A.R.S. § 8–242.01).

¶ 13 "Mental health treatment agency," as that term is used in A.R.S. § 8–201(20), is defined as a "health care agency which is licensed by the [Department of Health Services] and which provides those services which are required of the agency by *this chapter.*" A.R.S. § 36–501(24) (emphasis added); *see generally* Title 36, ch. 5 (entitled "Mental Health Services"). Mingus Mountain holds a Level I Behavioral Health Service Agency Health Care Institution License issued by DHS pursuant to Title 36, chapter 5, approving Mingus Mountain to provide, among other things, "Restrictive Behavior Management," which is defined as "the use of medication, *mechanical restraints, or seclu-*

*sion* for a client suffering a behavioral health emergency when less restrictive measures to assist the client in regaining control have failed." Arizona Administrative Code R9–20–101(A)(83) (emphasis added).

¶ 14 In sum, Mingus Mountain holds a license by DHS to provide mental health services under Title 36, chapter 5. A.R.S. § 36–501(24). It does so in a secured setting and is authorized to utilize mechanical restraints. Accordingly, it qualifies as a "mental health agency" under A.R.S. § 8–201(20).

## B. A.R.S. § 8–242.01

¶ 15 A.R.S. § 8–242.01, governing the treatment and placement of mentally ill children, provides two avenues by which a child may be admitted to a mental health agency. The court may approve the child's admission to a mental health agency for inpatient evaluation or treatment when evidence indicates that there is "reasonable cause" to believe the child meets the standard for "voluntary" inpatient evaluation or treatment set forth in A.R.S. § 36–518(C).[4] A.R.S. § 8–242.01(B). This admission based on "reasonable cause" is limited to a period of 72 hours, after which time the director of the agency must determine whether the child does in fact meet the admission criteria of A.R.S. § 36–518(C). A.R.S. §§ 8–242.01(B), (C). If the child does not meet that criteria, he or she must be discharged from the agency within 24 hours. If she does meet that criteria, she may remain in the mental health agency for only 48 more hours, pending court review pursuant to subsection (D). A.R.S. § 8–242.01(C).

A.R.S. § 8–242.01(D) provides:

> If it appears from an inpatient or outpatient mental health evaluation that a child meets the standards for admission in § 36–

---

3. The record reflects that the juvenile ran away from Mingus Mountain in August 1997. The court ordered that the juvenile's placement in Mingus Mountain, and the payments therefor, be terminated effective August 9, 1997. This appeal is not moot, however, because the issue raised is capable of repetition yet evading review. *See Matter of Maricopa County Cause No. MH–90–00566,* 173 Ariz. 177, 180, 840 P.2d 1042, 1045 (App.1992). Moreover, whether DES is required to pay its share of the placement cost remains at issue. *See Gerald F.,* 190 Ariz. at 195, 945 P.2d at 1326.

4. Actually, A.R.S. § 36–518(C) does not set forth a "standard" for inpatient evaluation or treatment so much as it sets forth the procedure whereby a parent, guardian, or custodian can apply to "voluntarily" admit a child to a mental health agency. This procedure culminates in a voluntary admission when the medical director of the mental health agency determines that the child "needs an inpatient evaluation or will benefit from the care and treatment" of the mental health agency. A.R.S. § 36–518(C)(5).

518 and is suffering from a mental disorder, personality disorder or emotional condition and inpatient mental health treatment is recommended, the juvenile court *shall* hold a hearing to determine the most appropriate treatment alternative. The court may approve admission of a child to a mental health agency *if the court finds by clear and convincing evidence* that:

    1. Available alternatives to hospitalization have been explored and considered ... to the *final* preference of placement in a mental health agency.

    2. An available alternative is not appropriate *and the child is in need of inpatient care and treatment offered by a mental health agency.*

(Emphasis added.) After this hearing, the court may approve admission of the child to the mental health agency, but must state in writing the reasons for making its determination. A.R.S. § 8–242.01(E). The placement of the child in the mental health agency must be reviewed at least every 60 days. A.R.S. § 8–242.01(G).

■ ¶ 16 We are mindful that the disposition of this juvenile was problematic for the court. The record is replete with evidence that the juvenile had a major substance abuse and behavioral problem, and she clearly needed placement in a secure facility. On the other hand, she had a very low score on the ADOJC risk assessment scale, which supported the court's finding that commitment at Black Canyon was not appropriate. Mingus Mountain was a secure facility that indicated that it would accept the juvenile. However, before placing a juvenile at Mingus Mountain or any other mental health agency, due process *mandates* that the court comply with A.R.S. § 8–242.01. *E.g., Pima County Public Fiduciary v. Superior Court,* 26 Ariz. App. 85, 546 P.2d 354 (1976) (it is fundamental law that person cannot be deprived of liberty by involuntary hospitalization without due process of law); *Matter of Appeal in Pima County Mental Health Serv. Action*

*No. MH–1140–6–93,* 176 Ariz. 565, 567, 863 P.2d 284, 286 (App.1993) (statutes providing for involuntary commitment on basis of mental illness must be strictly construed); *Matter of Maricopa County Cause No. MH–90–00566,* 173 Ariz. 177, 182, 840 P.2d 1042, 1047 (App.1992) (civil commitment involves "massive curtailment of liberty" that can have adverse social consequences or significant unfavorable stigma; proposed patient must be accorded due process protection).

■ ¶ 17 We agree that the court erred in placing the juvenile in Mingus Mountain. The court made absolutely no attempt to comply with A.R.S. § 8–242.01. It held no hearing under subsection (D) and made none of the findings required by that subsection, findings that the court was required to make by clear and convincing evidence. There was no evidence in the record, much less clear and convincing evidence, that the juvenile suffered from any form of mental illness or disorder or was in need of inpatient care or treatment in a mental health agency.[5]

¶ 18 "The main objective of the juvenile court system is the protection and rehabilitation of the juvenile." *Gerald F.,* 190 Ariz. at 201, 945 P.2d at 1332. Although the placement here might have been in what the court thought was the juvenile's best interest, the juvenile's right to due process of law before being placed in a mental health agency limits the court's discretion absent compliance with A.R.S. § 8–242.01.

**C. Order Requiring DES to Share Expenses of Placement**

■ ¶ 19 DES also argues that the court erred in ordering it to pay a share of the expenses of the juvenile's placement at Mingus Mountain.

¶ 20 DES is statutorily obligated to provide the cost of care for children who are adjudicated dependent and who are in institutions. A.R.S. § 46–134(A)(2)(c)(i). DES

---

5. Even a limited 72 hour admission for the purposes of an inpatient evaluation by the agency's medical director can only be made if "evidence indicates that there is reasonable cause to believe" that the juvenile would meet the "voluntary" admission standard of A.R.S. § 36–518(C).

A.R.S. § 8–242.01(B). Thus, because there was no "reasonable cause" to believe that the juvenile would meet the A.R.S. § 36–518(C) standard, the juvenile could not have been placed in Mingus Mountain or any other mental health agency.

acknowledges this obligation, but contends that it should not be responsible for costs associated with the juvenile's placement in Mingus Mountain because such placement did not comply with A.R.S. § 8–242.01.

¶ 21 Initially, we note that there is at least a facial appeal to DES' argument. DES did not sit silent while the court committed error; to the contrary, DES clearly explained the requirements of A.R.S. § 8–242.01 to the court, and vigorously objected and argued the issue when the court nevertheless ordered the juvenile placed in violation of that statute.

¶ 22 That being said, however, DES cites no authority for the proposition that its obligation under A.R.S. § 46–134(A)(2)(c)(i) to pay for the institutionalization of a dependent child is conditioned upon the court's compliance with A.R.S. § 8–242.01. In our opinion, such a holding would lead to untenable results.[6] The juvenile was a dependent child, and, as such, DES was entrusted by law with the responsibility for her "care, custody, and control." *Arizona Dep't of Econ. Sec. v. Superior Court,* 178 Ariz. 236, 240, 871 P.2d 1172, 1176 (App.1994). The court's error in placing the juvenile in Mingus Mountain does not void DES' legal obligation toward her.

## CONCLUSION

¶ 23 Based on the foregoing, the court's order of June 27, 1997 placing the juvenile in Mingus Mountain is reversed. The order of that date ordering DES to share the cost of such placement is, however, affirmed.

WEISBERG, P.J., and NOYES, J., concur.

---

**6.** For example, if DES were relieved of the placement costs in this case, by analogy, the Department of Corrections could be relieved of its obligation to pay the contract price for the incarceration of a criminal defendant improperly imprisoned in a privately run facility. *See* A.R.S. § 41–1609 (allowing DOC to enter into contracts with private facilities for incarceration).