NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAMES W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.W., S.W., *Appellees*.

No. 1 CA-JV 14-0206
FILED 2-24-2015

Appeal from the Superior Court in Maricopa County
No. JD23321
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

John L. Popilik, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z. Alfred
*Counsel for Appellees*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

**G E M M I L L**, Judge:

¶1        James W. ("Father") appeals the juvenile court's order terminating his parental rights to his daughter, S.W. and son, J.W (collectively "the children"). Father argues he was denied due process, the juvenile court abused its discretion by admitting certain evidence, and there was insufficient evidence to support the ruling. For the following reasons, we affirm.

¶2        Father is the biological parent of teenage daughter S.W. and teenage son, J.W. He is also the father of adult daughter, Samantha W., who reached adulthood during the pendency of the proceedings and is no longer a party in this action. Father had full custody of the children and they lived with him for 14 years, along with Father's girlfriend, Lenita.

¶3        In March 2013, the children and Samantha were taken into custody by the Department of Child Safety ("DCS")[1] based upon allegations of physical abuse by Father that occurred in December 2012. The incident involved Father striking the children with a closed fist after they tried to intervene in a dispute between Father and Lenita.

¶4        In a report made following the incident, DCS listed 22 prior referrals to the department that included allegations of abuse by Father and Lenita. Father admitted to being an alcoholic who continues to drink and is unable to control his alcohol consumption.

¶5        While the children were in DCS custody, Father visited them and was asked to leave after 10 minutes because he became belligerent and accusatory towards the children. Father did not attend the next two scheduled visits. In April 2013, the court found the children dependent as to Father.

---

[1]  Child Protective Services (CPS) was formerly a division of the Arizona Department of Economic Security (ADES). Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for creation of CPS and for ADES's administration of child welfare and placement services under title 8, and the powers, duties, and purposes from those entities were transferred to the newly established DCS. *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54. Accordingly, DCS has been substituted for ADES in this matter. *See* ARCAP 27(b). Our references to DCS in this decision encompass both ADES and the former CPS, as appropriate.

¶6        Father's case plan was, initially, family reunification.  Father was required to attend substance abuse and domestic violence classes as well as submit urinalysis screening through TASC.   Additional individualized reunification services included a psychiatric evaluation and counseling to address issues of alcoholism, child discipline, and anger.

¶7        In July 2013, DCS moved to stop visits between Father and the children.  DCS asserted that, based on a history of physical and emotional abuse, visitation would not be in the children's best interests and would be harmful.  Father objected to the motion but the court granted it and discontinued visitation.

¶8        In February 2014, DCS moved to terminate Father's parental rights on the statutory grounds of abuse, substance abuse, and nine months out-of-home placement found respectively in Arizona Revised Statute ("A.R.S.") sections 8-533 (B)(2), -533 (B)(3), and -533(B)(8)(a).  In the months preceding DCS' motion to terminate, Father tested positive for alcohol three times and missed numerous urinalysis screenings.  Father also failed to complete some of the required services including an anger management course and a psychiatric evaluation.

¶9        A contested severance hearing was held on July 11, 2014.  The court terminated Father's parental rights based on the three grounds alleged.  The court made a number of significant findings, including the following:

> (1) "Father's physical abuse of the children and refusal to participate in services offered to address this issue prevents him from being able to appropriately and safely parent his children."
>
> (2) "Father is unable to discharge his parental responsibilities" due to a history of alcohol abuse that is expected to "continue for a prolonged indeterminate period."
>
> (3) "The Department made reasonable efforts to provide Father with rehabilitative services through TERROS and TASC," and
>
> (4) "Father has substantially neglected or willfully refused to remedy the circumstances that cause the children to be in

3

an out-of-home placement." The juvenile court also found that severance would be in the children's best interests.

**¶10** Father timely appeals the severance order. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶11** This court reviews a juvenile court's termination order "in the light most favorable to sustaining the court's decision and will affirm it 'unless we must say as a matter of law that no one could reasonably find the evidence [supporting statutory grounds for termination] to be clear and convincing.'" *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10, 210 P.3d 1263, 1266 (App. 2009) (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9, 281 P.2d 786, 791 (1955)).

**¶12** Father presents three issues for review: (1) whether Father was denied due process by not receiving notice of one of the grounds for severance; (2) whether the juvenile court abused its discretion by admitting the report of a state-retained psychologist; (3) whether DCS failed to prove grounds for severance by clear and convincing evidence.

## I.    Father was Not Deprived of Due Process

**¶13** Father contends he was denied due process because DCS did not give him notice until July 11, 2014, the day of the hearing, that it was alleging nine month's out-of-home placement as a ground for severance. Due process means providing "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to inform them an opportunity to present their objections." *Maricopa Cnty. Juv. Action No. JS-734*, 25 Ariz. App. 333, 339, 543 P.2d 454, 460 (App. 1975) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

**¶14** In its motion for termination of parent-child relationship filed in February 2014 - four months before the termination hearing - DCS alleged as a ground for severance that the children had been in an out-of-home placement for nine months. DCS cited the out-of-home placement statute and stated that Father "has substantially neglected or willfully refused to remedy the circumstances that cause the children to be in an out-of-home placement." DCS therefore complied with the requirements of due process.

## II.    The Court did not Err in Admitting the Psychologist's Report

**¶15**    Father contends that the juvenile court abused its discretion and violated his due process rights by admitting a report from a psychological evaluation even though the author, Dr. James Thal, Ph.D., was not at the hearing to be cross-examined.  This court ordered supplemental briefing regarding the applicable statutes, rules, and common law principles regarding the admissibility of Dr. Thal's evaluation report ("Thal report").  We have reviewed the parties' supplemental briefing and the record.  We apply an abuse of discretion standard when reviewing the juvenile court's evidentiary rulings.  *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239, ¶ 13, 282 P.3d 437, 440 (App. 2012).  We review de novo the interpretation and application of statutes and rules. *Ariz. Dep't of Econ. Sec. v. Ciana H.*, 191 Ariz. 339, 341, ¶ 11, 955 P.2d 977, 979 (App. 1998).

**¶16**    Rule 44(B)(2)(e),[2] through Rule 44(D)(2),[3] impacts the admissibility of documentary evidence in a juvenile termination

---

[2] Rule 44(B)(2)(e) provides that a party shall provide:

> A list of and copies of all exhibits which the party intends to use at trial. If a party objects to the admission of an exhibit, the party shall file a notice of objection and the specific grounds for each objection and provide a copy of the notice to all parties and the court within ten (10) days of receipt of the list of exhibits. Specific objections or grounds not identified in the notice of objection shall be deemed waived, unless otherwise ordered by the court. No exhibits shall be used at trial other than those disclosed in accordance with this rule, except for good cause shown.

[3] Rule 44(D)(2), entitled "Disclosure Statement Prior to Termination Adjudication Hearing," provides that:

> Unless otherwise ordered by the court, the parties shall disclose to each other the information identified in subsection (B)(2)(a-e) of this rule, and any social study prepared pursuant to A.R.S. 8-536 or by order of the court within thirty (30) days after the initial hearing.

proceeding. The rule states that parties must provide "[a] list of and copies of all exhibits which the party intends to use at trial." Ariz. R.P. Juv. Ct. 44(B)(2)(e). To challenge admissibility of a listed exhibit, a party must file a notice of objection within 10 days of receiving the disclosure list. *Id.* If the party opposing the evidence does not preserve objections by asserting them, then all objections to the admissibility of the evidence are deemed waived, unless otherwise ordered by the court. *Id.*

**¶17** DCS filed a disclosure statement before the hearing, listing witnesses and exhibits. Dr. Thal was listed as a witness by DCS and his report was generically listed along with other reports. DCS did not expressly promise that it would produce Dr. Thal as a witness, in the disclosure statement or otherwise, and Father did not inquire before the day of the hearing. Nor did Father file an objection within ten days of receiving the disclosure. The objection available to Father within the ten day period was that the report was hearsay. In accordance with the language of Rule 44(B)(2)(e), Father waived his hearsay objection by not asserting it in timely fashion.

**¶18** Arizona Rule of Procedure for the Juvenile Court 45(D)[4] is a limited exception to the hearsay rule. The rule provides that certain reports will be admitted into evidence if the author of the report is present at the trial or hearing. Here, DCS did not need Rule 45(D) to support the admission of the report, because Father had already waived his hearsay objection by not asserting it within ten days after the listing of the report. Although Rule 45(D) allows the admission of a report when the author is present, it does not provide that such a report is necessarily inadmissible just because the author is not present. If the hearsay objection is not timely asserted, Rule 45(D) does not preclude admission.

**¶19** Our conclusion that no error occurred in admitting the Thal report is further supported by the following facts. On the day of the

---

*The provisions of subsection (B)(2)(e) shall govern admissibility of exhibits.*

(Emphasis added.)

[4] Rule 45(D) provides that "a report of any psychological . . . evaluation of any party or participant . . . shall be admitted into evidence if the report has been disclosed to the parties pursuant to 44(B)(1) and the author of the report is available for cross-examination."

hearing, Father objected to the admission of the Thal report because Dr. Thal was not there to testify. Father did not, however, ask for a brief continuance to allow Dr. Thal to be subpoenaed or for the court to have him testify telephonically. We expect most juvenile court judges would carefully consider such a request, if received, because of the importance of the issues involved and because the waiver aspect of Rule 44(B)(2)(e) does not apply if "otherwise ordered by the court." But Father did not make such a request. Additionally, we note that the Thal report was generated in July 2013 and submitted to the court by the time of the status conference on September 10, 2013. The juvenile court had already read and presumably relied on the report in ruling, in September 2013, that the no visitation order would continue in effect. At the termination hearing in July 2014, the court did not explain why it was overruling Father's objection, but it is clear from the record that the court had already reviewed the report in advance of the hearing.

**¶20** For all of these reasons, we conclude that the court committed no reversible error by admitting the Thal report at the severance hearing.

## III. Clear and Convincing Evidence Supported Severance

**¶21** The juvenile court must meet two elements in order to sever parental rights under state law. First, the juvenile court must find by clear and convincing evidence that the facts of the case fulfill at least one of the statutory grounds for termination that are enumerated in A.R.S. § 8-533(B). *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 176–77, ¶ 9, 319 P.3d 236, 238–39 (App. 2014). Next, the juvenile court must find by a preponderance of the evidence that the termination would be in the child's best interests. *Id.* Father does not challenge the court's finding that severance was in the children's best interests, and we therefore do not address that issue.

**¶22** Father's rights were severed under the abuse ground of A.R.S. § 8-533(B)(2), the substance abuse ground of A.R.S. § 8-533(B)(3), and the nine months out-of-home placement ground of A.R.S. § 8-533(B)(8)(a). "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3, 53 P.3d 203, 205 (App. 2002). Because sufficient evidence supports the juvenile court's findings on the abuse ground under A.R.S. § 8-533(B)(2) and the substance abuse ground under A.R.S. § 8-533(B)(3), we

need not address the out-of-home placement ground under A.R.S. § 8-533(B)(8)(a).

**¶23** First, we address Father's contention that severance was not appropriate under any of the grounds because DCS did not provide adequate reunification services. Father asserts that because his visitation rights were terminated, DCS and the court failed to provide him adequate reunification services and an opportunity to repair his relationship with the children.

**¶24** Under subsections (B)(2) and (B)(3) of A.R.S. § 8-533, DCS has no explicit duty to provide reunification services. *See* A.R.S. § 8-533(B)(2)–(3); *cf.* A.R.S. § 8-533(B)(8) (indicating DCS has a statutory obligation to make a "diligent effort to provide appropriate reunification services" under the out-of-home placement grounds). This court has noted that with severance in general, even when there is no statutory duty imposed "there may be a constitutional obligation on [DCS] to engage in reunification efforts." *James H. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 1, 2 ¶ 8, 106 P.3d 327, 328 (App. 2005). Therefore, without deciding whether there is such a constitutional obligation, this court will consider Father's arguments despite the absence of a statutory requirement.

**¶25** Reunification services are designed "to provide [the parent with] the time and opportunity to participate in programs designed to help [the parent] become an effective parent[.]" *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App. 1994). DCS is not required to "provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.*

**¶26** The juvenile court found that DCS made a diligent effort to provide reunification services. This court agrees there is substantial and reasonable evidence to support the court's findings. In granting the severance, the court found that Father was offered urinalysis testing through TASC, substance abuse assessment and treatment through TERROS, and other individual counseling services. The court found that Father "failed to successfully complete any of the services." The court noted, however, that Father was unable to complete parent aide services, other than the individual portion, because the children refused to participate in visitation. Finally, the court found that Father failed to complete anger management classes offered to him.

¶27 Furthermore, DCS is not obligated to "undertake rehabilitative measures that are futile." *Mary Ellen C.*, 193 Ariz. 185, 192, ¶ 34, 971 P.2d 1046, 1053 (App. 1999). The court found that "Father's physical abuse of the children and refusal to participate in services offered to address this issue prevents him from being able to appropriately and safely parent his children." This court agrees with the juvenile court for the reasons already listed and because of the following. Father's visitation with children, prior to termination of that right, was cancelled after ten minutes when Father became belligerent and accusatory towards the children. The children indicated they were "terrified of their Father" and not willing to have contact with him. Furthermore, on the day of the termination hearing, the children were present yet asked to be excused because they were "confronted outside of the courtroom by Father." This court finds there was clear and convincing evidence that additional services would have been futile. *See id.* at 193, ¶ 39, 971 P.2d at 1054.

¶28 Finally, there is clear and convincing evidence supporting the grounds for severance. Under A.R.S. § 8-533(B)(2), parental rights can be terminated when "the parent has neglected or willfully abused a child." "Abuse" is defined in title 8, in pertinent part, as "the infliction or allowing of physical injury, impairment of bodily function or disfigurement[.]" A.R.S. § 8–201(2).

¶29 The record in this case contains sufficient evidence of abuse. Father testified that he punched his son in the nose and pulled his daughter's hair, "using it to lift her off of the floor." Father testified that he did not remember leaving bruises on the children or causing J.W. a black eye, however the court noted that Father claimed he had a "poor memory."

¶30 There is also clear and convincing evidence that Father is unable to discharge his parental responsibilities due to a history of alcohol abuse and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period. A.R.S. § 8-533(B)(3).

¶31 Father testified that he is "dry alcoholic" who had his first drink at age 13. He has known of his problems with alcohol since his first daughter was born nineteen years ago. Father failed to complete services through TERROS because he believes he can control his drinking and does not believe that he should abstain from consuming alcohol. While under the requirement to complete DCS services, Father tested positive for alcohol on three separate occasions. Father admitted to three relapses but stated he

only drank one to two beers. Father also missed four required tests. The findings of the juvenile court are supported by substantial evidence.

**CONCLUSION**

**¶32**        For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to J.W. and S.W.



Ruth A. Willingham · Clerk of the Court
FILED: ama