NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMES M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, O.M., J.M., B.M., *Appellees*.

No. 1 CA-JV 15-0388
FILED 5-26-2016

Appeal from the Superior Court in Maricopa County
No.  JD21119
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

---

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Patricia K. Norris joined.

---

**J O N E S**, Judge:

¶1	James M. (Father) appeals the juvenile court's order terminating his parental rights to O.M., J.M., and B.M. (collectively, the Children), alleging the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2	On December 29, 2011, Father was arrested after attempting to sell two speed limit signs he had stolen. That evening, officers served a search warrant at the mobile home where Father was living with the Children, their adult half-sister, two nieces, and mother (Mother). Within a locked room only Father had access to, officers found methamphetamine, drug paraphernalia, and a rifle. The officers also observed the Children, then ages seven, five, and three, were dirty and disheveled, the home was overcrowded, the kitchen contained only rotten food, and the roof was caving in and appeared to leak. Mother later admitted the living situation was "not the best," but the family was unable to rent an apartment "due to having seven Chihuahua dogs and 4 large dogs."

¶3	The Children were removed from the home, and, in March 2012, DCS filed a dependency petition alleging the Children were dependent as to Father on the grounds of neglect.[2] Father contested the

---

[1]	We view the facts in the light most favorable to upholding the juvenile court's order terminating parental rights. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citing *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008)).

[2]	Although paternity had not been established for O.M. at the time the petition was filed, genetic testing, initiated by DCS, later confirmed Father is her biological parent.

dependency but submitted the issue to the juvenile court on the record. In July 2012, the court adjudicated the Children dependent as to Father and confirmed a case plan of family reunification.[3]

**¶4** Meanwhile, Father pleaded guilty to trafficking stolen property and misconduct involving weapons, both felony offenses. He admitted having been on probation for a prior felony conviction for possession of a dangerous drug at the time of the offenses and, in April 2012, was sentenced to seven and a half years' imprisonment with credit for 111 days of presentence incarceration. He had previously been incarcerated for two years, from 2007 to 2009.

**¶5** DCS encouraged Father to participate in available services while incarcerated, and he completed classes on parenting, diversity, job readiness, and life skills. He also participated in community-based substance abuse support groups.

**¶6** Father wrote to the Children at least once per month. Between February and May 2013, while the Children were placed with their paternal aunt (Aunt), the Children visited Father once and spoke with him on the telephone. But, when Aunt became unable to care for the Children and the Children were no longer placed together, it became difficult to coordinate phone calls. Father requested more contact, but all three Children exhibited negative, aggressive behaviors and required intensive behavioral health services to ensure their success at home and in school, and it was reported these behaviors increased following contact with Father. The Children's therapist therefore recommended only written correspondence with Father. The DCS case manager reported the Children were reluctant to write to Father despite encouragement from both DCS and their placements to do so. Father remains incarcerated with an anticipated release date between December 2017 and March 2018.

**¶7** During an unsupervised visit with Mother in February 2014, the Children witnessed Mother's boyfriend commit a murder, prompting the juvenile court to adopt a concurrent case plan of severance and adoption. Thereafter, Mother stopped participating in services altogether, and the case plan was changed, without objection, to severance and adoption. DCS filed a motion to terminate the parent-child relationship as to both parents, alleging severance was warranted as to Father as a result

---

[3] The Children were adjudicated dependent as to Mother on the grounds of neglect and substance abuse in April 2012.

of his lengthy incarceration. Father contested the allegations and the matter proceeded to trial in September 2015.

**¶8** In addition to providing information regarding Father's incarceration, the DCS case manager testified the Children never mentioned Father and did not appear to have any relationship with him prior to his most recent incarceration. She described the Children as adoptable and bonded to the current placement and testified the placement was willing and able to adopt the Children and meet their needs. The DCS case manager also testified severance was in the Children's best interests because it would provide them the opportunity to have a permanent, safe, and stable home. Although she believed the Children love their father, she testified the uncertainty of waiting for Father to be released would only continue the inconsistency and trauma they had experienced for years.

**¶9** At trial, Father testified he had been incarcerated for six of B.M.'s eleven years, five of J.M.'s nine years, and four of O.M.'s seven years. He earned approximately $32 per month working as a janitor, which he spent on stamps and coffee. On cross-examination, Father admitted he used methamphetamine with Mother when he was not incarcerated and caring for the Children. Despite these circumstances, Father testified he had a bond with the Children, he would be able to care for them upon his release, and that they should be placed with family. He also testified he did not anticipate his nine prior felony convictions would make finding a job and a home for himself and the Children difficult, and stated he would father the Children from prison by "writ[ing] to them, talk[ing] to them, [and] visit[ing] with them."

**¶10** After taking the matter under advisement and considering the *Michael J.* factors,[4] the juvenile court found DCS had proven by clear

---

4 In *Michael J. v. Arizona Department of Economic Security*, our supreme court held the juvenile court should "consider all relevant factors" in making a decision on whether a sentence of imprisonment is sufficiently long to deprive a child of a normal home for a period of years:

> [I]ncluding, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the

and convincing evidence that termination of Father's parental rights was warranted because Father had been convicted of a felony and would be incarcerated for a length of time that would deprive the Children of a normal home for a period of years. Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(4).[5] The court also found severance was in the Children's best interests and entered an order terminating Father's parental rights.[6] Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶11** A parent's rights may be terminated if the juvenile court finds by clear and convincing evidence "[t]hat the parent is deprived of civil liberties due to the conviction of a felony . . . if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years."[7] A.R.S. § 8-533(B)(4); Ariz. R.P. Juv. Ct. 66(C); *Michael J.*, 196 Ariz. at 249, ¶ 12. Father does not argue the evidence is insufficient to support the juvenile court's finding that his prison sentence was of sufficient length to justify severance pursuant to A.R.S. § 8-533(B)(4), but only that DCS did not provide appropriate reunification efforts. Father contends this resulted in a violation of his "familial association due process rights" and that the *Michael J.* factors were impermissibly "skewed by [DCS]'s inaction and failure to provide services."

---

child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

196 Ariz. 246, 251-52, ¶ 29 (2000).

[5] Absent material changes from the relevant date, we cite a statute's current version.

[6] Mother's parental rights to the Children were also terminated at this time. She does not challenge this order and is not a party to this appeal.

[7] The juvenile court must also find by a preponderance of the evidence that severance is in the child's best interests, Ariz. R.P. Juv. Ct. 66(C); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005), but Father does not argue insufficient evidence supports this finding.

**¶12** Here, throughout the case, DCS requested the juvenile court make judicial findings that it was making reasonable efforts to reunify the family. Father did not object to the requests or the forms of order, and the court entered DCS's requested findings in August 2012; January, July, and September 2013; June, August, and November 2014; and March, July, and September 2015. We review the court's factual findings that DCS made reasonable efforts to reunify the family for an abuse of discretion and will affirm so long as there is substantial evidence to support them. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81-82, ¶ 13 (App. 2005) (citations omitted).

**¶13** DCS is not obligated by statute to provide reunification services to a parent whose parental rights are terminated on the basis of a lengthy incarceration. *James H. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 1, 2, ¶¶ 6-7 (App. 2005) (comparing subsections (B)(8) and (B)(11) of A.R.S. § 8-533, which impose an explicit duty upon DCS to provide reunification services, with subsection (B)(4), which does not). And, although there may be a separate constitutional obligation to engage in reunification efforts, DCS need not undertake reunification efforts that are futile, but only those with "a reasonable prospect of success." *Id.* at ¶ 8 (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999)). Nor is the court required to "leav[e] the window of opportunity for remediation open indefinitely." *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (citing *Maricopa Cnty. Juv. Action No. JS-4283*, 133 Ariz. 598, 601 (App. 1982)).

**¶14** Under the circumstances presented here, we conclude additional reunification services would have been futile. At the time of trial, Father had been incarcerated for more than half of the Children's lives, and there was no evidence of any existing relationship between the Children and Father. Moreover, Father had, at that time, at least two more years of prison time and was completely unavailable to personally provide for the Children's physical and emotional needs. As in *James H.*:

> [P]rolonged incarceration is something neither [DCS] nor the parent could ameliorate through reunification services. The damage to the parent-child relationship that justifies severance stems from the enforced physical separation of the parent from the child, and nothing [DCS] has to offer in the way of services can affect that reality. Nor could [Father] by participating in services remedy his inability to provide a normal home for the children for the period for which he will be incarcerated.

210 Ariz. at 3, ¶ 9.

**¶15** That the *Michael J.* factors aligned in support of severance is the natural result of Father's lengthy incarceration. There is simply no remedy for Father's prolonged absence and resultant inability to provide the Children a normal home for a period of years. *See Maricopa Cnty. Juv. Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986) (defining a "normal home" as "a home in which the respondent natural father has a presence").

**¶16** Even assuming there is a constitutional obligation to provide reunification services when severance is sought under A.R.S. § 8-533(B)(4), we conclude the juvenile court did not err in finding DCS made reasonable efforts at reunification with regard to Father here; further services would have been futile and were not required.

## CONCLUSION

**¶17** The juvenile court's order terminating Father's parental rights to the Children is affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama