106 P.3d 327

**JAMES H., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECO-
NOMIC SECURITY, Lacey H., Des-
tiny H., and Gloria H., Appellees.**

No. 1 CA–JV 04–0055.

Court of Appeals of Arizona,
Division 1, Department D.

Feb. 15, 2005.

As Amended March 11, 2005.

Review Denied May 24, 2005.

Terry Goddard, Attorney General By Carol A. Salvati, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Robert D. Rosanelli, Phoenix, Attorneys for Appellant.

Steven G. Clark, P.C. By Steven G. Clark, Glendale, Guardian ad Litem for Children.

**OPINION**

SULT, Judge.

¶ 1 Appellant appeals the termination of his parental rights pursuant to Arizona Revised Statutes ("A.R.S.") § 8–533(B)(4) (Supp.2003), the provision permitting severance based either on a felony conviction showing unfitness to parent or on a lengthy prison sentence. He argues that the Arizona Department of Economic Security failed to offer him family reunification services prior to seeking severance and therefore the severance should be overturned. Because we find that the Department has no duty to offer reunification services when the termination of parental rights is based on length of sentence, we affirm.

**BACKGROUND**

¶ 2 Appellant is the father of Destiny H., born July 18, 2000, Gloria H., born September 2, 2001, and Lacey H., born August 8, 2002. Appellant was sentenced to concurrent prison terms in March 2003, 5.5 years for stalking and 5 years for conspiracy to manufacture dangerous drugs.

¶ 3 On September 11, 2002, the juvenile court had found Destiny, Gloria, and Lacey dependent as to Appellant. Following Appellant's imprisonment, the Department filed a motion to terminate Appellant's parental rights seeking severance on both grounds specified in A.R.S. § 8–533(B)(4): (1) Appellant has a felony conviction of such nature as to prove him unfit to parent, and (2) Appellant's sentence is of such length that the children will be deprived of a normal home for a period of years. The Department also alleged that termination would serve the best interests of the children. Following trial, the juvenile court terminated Appellant's parental rights on both grounds and found termi-

nation to be in the best interests of the children.

¶ 4 On appeal, Appellant does not contest either of the substantive bases for severance under subsection (B)(4). Rather, he argues that prior to seeking termination under subsection (B)(4), the Department was required to make a diligent effort to provide reunification services. Appellant asserts that when he was sentenced, "[i]nstead of offering him services, [the Department] quickly wrote him off." Thus, Appellant argues, the order terminating his parental rights should be reversed.

## ANALYSIS

¶ 5 The statutory provision under which Appellant's rights were terminated provides that evidence sufficient to justify termination of parental rights shall include:

> That the parent is deprived of civil liberties due to the conviction of a felony if the felony of which that parent was convicted is of such nature as to prove the unfitness of that parent to have future custody and control of the child ... or if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years.

A.R.S. § 8–533(B)(4). We independently review legal issues requiring the interpretation and application of this statute. *Mary Lou C. v. Arizona Department of Economic Security*, 207 Ariz. 43, 47, ¶ 9, 83 P.3d 43, 47 (App.2004).

¶ 6 Unlike subsections (B)(8) and (B)(11) of A.R.S. § 8–533, subsection (B)(4) imposes no explicit duty on the Department to provide reunification services. In fact, the legislature in 1998 amended the introductory language of A.R.S. § 8–533(B) to delete therefrom the requirement that the court consider "the availability of reunification services to the parent and the participation of the parent in these services" for *all* grounds for severance. 1998 Ariz. Sess. Laws, ch. 276, § 13. This deletion can be read as an affirmative legislative decision that reunification services are not required in the context of a subsection (B)(4) severance.

¶ 7 Even when the language mandating the inquiry was still in the statute we nevertheless noted in *James S. v. Arizona Department of Economic Security*, 193 Ariz. 351, 354 n. 4, 972 P.2d 684, 687 n. 4 (App.1998), that there was no reunification obligation on the Department when the cause of severance was the length of a parent's prison sentence. Rather, we observed that prolonged imprisonment "cannot be remedied by reunification services." *Id.* With the 1998 deletion of the language, we can conclude with a high degree of certainty that the legislature has not imposed a statutory duty on the part of the Department to provide reunification services for a subsection (B)(4) severance.

¶ 8 Notwithstanding that no statutory duty is imposed, we acknowledge that with respect to severance in general there may be a constitutional obligation on the Department to engage in reunification efforts. In *Mary Ellen C. v. Arizona Department of Economic Security*, 193 Ariz. 185, 191–92, ¶ 32, 971 P.2d 1046, 1052–53 (App.1999), we observed regarding the constitutional protections implicated in seeking termination of parental rights that "[t]he combined effect of the fundamental character of a parent's right to his child and the severity and permanence of termination dictates that the court sever the parent-child relationship only in the most extraordinary circumstances, when all other efforts to preserve the relationship have failed." *Id.* (quoting *Maricopa County Juvenile Action Number JA 33794*, 171 Ariz. 90, 91–92, 828 P.2d 1231, 1232–33 (App.1991)). Thus, we held that severance based on mental illness, a subsection (B)(3) severance, could be upheld only if the Department also proved that the condition either was not amenable to rehabilitative efforts or that such efforts had been provided but had proven unsuccessful. *Mary Ellen C.*, 193 Ariz. at 193, ¶ 42, 971 P.2d at 1054. But we also held that there is no constitutional mandate to undertake reunification efforts that are futile. *Id.* The Department is obligated to undertake reunification only in cases where there is a reasonable prospect of success. *Id.* at 192, ¶ 34, 971 P.2d at 1053.

¶ 9 In this case, there were two bases for severance: a felony conviction showing pa-

rental unfitness and a sentence of such length as to deprive the children of a normal home. As to the former, we do not determine whether the constitutional duty to provide reunification services might be implicated in some cases arising thereunder. In this case of a lengthy prison sentence, however, we conclude that reunification efforts were not required because prolonged incarceration is something neither the Department nor the parent could ameliorate through reunification services. The damage to the parent-child relationship that justifies severance stems from the enforced physical separation of the parent from the child, and nothing the Department has to offer in the way of services can affect that reality. Nor could Appellant by participating in services remedy his inability to provide a normal home for the children for the period for which he will be incarcerated. As to this basis for severance, reunification services for Appellant would have clearly been futile.

## CONCLUSION

¶ 10 Appellant has not argued that the evidence is insufficient to support the trial court's finding that his prison sentence was of sufficient length to justify severance, only that reunification efforts were required but not made. Thus, we do not find that *Michael J. v. Arizona Department of Economic Security*, 196 Ariz. 246, 995 P.2d 682 (2000) is implicated by our decision and do not address our concurring colleague's concerns. We conclude here only that the Department had no duty to provide reunification services prior to seeking termination based upon length of sentence. We therefore affirm the juvenile court's order terminating Appellant's parental rights.

CONCURRING: G. MURRAY SNOW, Judge.

NORRIS, Judge, concurring.

¶ 11 On the facts presented here, the trial court determined that Appellant's prison sentence warranted termination of his parental rights because the sentence was of such length that the children would be deprived of a normal home for a period of years. A.R.S. § 8–533(B)(4). I join with the majority in affirming the juvenile court's order terminating Appellant's parental rights.

¶ 12 Our decision today also holds that where termination of a parent's rights is appropriate because of the length of the prison sentence, the state need not provide reunification services because such services are futile. I write separately to emphasize the length of the parent's prison sentence by itself is not dispositive of whether termination is appropriate.

¶ 13 Section 8–533(B)(4) sets out no " 'bright line' definition of when a sentence is sufficiently long to deprive a child of a normal home for a period of years...." *Michael J.*, 196 Ariz. at 251, ¶ 29, 995 P.2d at 687 (2000). Indeed, a "20–year sentence might not provide sufficient basis for severing an incarcerated parent's rights, while in another case a 3–year sentence could provide the needed basis." *Id.* Thus, the "better approach" is to consider each case on its particular facts. *Id.*

¶ 14 The length of the parent's sentence is just one of the many "particular facts" the court must consider in making the complex decision to sever a parent's rights under A.R.S. § 8–533(B)(4). As our Supreme Court held in *Michael J.*:

> The trial court, in making its decision [to sever an incarcerated parent's rights], should consider all relevant factors, including, but not limited to: (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between that child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Id.* at 252, ¶ 29, 995 P.2d at 688. Only after the juvenile court considers these, as well as any other relevant factors, can the court determine whether the sentence is of such a

length as to deprive a child of a normal home for a period of years. *Id.*

¶ 15 Nothing in our opinion today should be read as excusing a court from having to make this multifactor determination when severing an incarcerated parent's rights. Nor should our opinion be viewed as countermanding our Supreme Court's directive that a juvenile court must consider the degree to which the parent-child relationship can be continued and nurtured in spite of the parent's incarceration.