NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAMES S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.S., S.S., *Appellees*.

No. 1 CA-JV 18-0150
FILED 2-14-2019

Appeal from the Superior Court in Coconino County
No. JD201500008
The Honorable Margaret A. McCullough, Judge *Pro Tempore*

**VACATED; REMANDED**

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Sandra L.J. Diehl
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Toni M. Valadez
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jon W. Thompson joined. Presiding Judge Jennifer M. Perkins concurred in part and dissented in part.

---

**W I N T H R O P**, Judge:

**¶1**          James S. ("Father") appeals the juvenile court's order terminating his parental rights to his two youngest children ("the children"). Father argues the court violated his due process rights by: (1) improperly converting his initial termination hearing (the "initial hearing") to a termination adjudication hearing (the "accelerated adjudication hearing") after he failed to appear in court; and (2) refusing to allow him to testify at the accelerated adjudication hearing once he subsequently appeared before the court. In this decision, we again discuss the minimal due process safeguards applicable to an accelerated termination adjudication hearing under Arizona Rules of Procedure for the Juvenile Court ("Rule") 64(C) and 65(C)(6)(c) as outlined in the recent Arizona Supreme Court decision *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437 (2018).

**¶2**          For the following reasons, we vacate the juvenile court's order terminating Father's parental rights and remand for a termination adjudication hearing consistent with this decision.

### FACTS AND PROCEDURAL HISTORY[1]

**¶3**          In February 2015, Father was arrested for driving under the influence of alcohol with the children in the car. The Department of Child Safety ("DCS") took custody of the children and filed a petition alleging that the children were dependent due to Father's neglect. Father struggles with alcohol addiction, and he has been arrested multiple times due to his intoxication. DCS removed the children from Father's care, and the juvenile

---

[1]     "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

court found the children dependent.[2]  After Father successfully participated in a substance-abuse program, the court dismissed the dependency and returned the children to Father's care.  Father relapsed in February 2016, and DCS again removed the children from Father's custody and filed a second dependency petition.  After the filing of the second petition, Father's adult daughter offered to serve as the children's permanent guardian.  Unfortunately, the permanent guardianship process was unsuccessful, and DCS filed a motion requesting that the court permanently terminate Father's parental rights so that the children could be adopted.  At the time of filing, the children had been out of Father's care for twenty-three months.

¶4        An initial hearing was held pursuant to Rule 65 on March 5, 2018.  Father failed to appear, and DCS and the children's guardian ad litem ("GAL") moved to convert the initial hearing into an accelerated adjudication hearing.[3]  Father's attorney requested that the court forgo converting the hearing and instead allow her to submit Father's denial as to the allegations in the motion for termination.  The court refused the request and found that Father failed to appear without good cause shown.  The court then accelerated the resolution of the motion for termination's merits by allowing DCS to present evidence in support of its motion pursuant to Rule 65(C)(6)(c).

¶5        Because the children are members of the Navajo Nation, the provisions of the Indian Child Welfare Act ("ICWA") applied to the accelerated adjudication hearing.  Under ICWA, DCS is required to prove through an expert witness specializing in child services for native children that active efforts had been made to keep the family together but were unsuccessful, and that continued custody of the children by Father would likely result in serious emotional or physical harm to the children.  25 U.S.C. § 1912(f) (2018).  Not surprisingly, DCS' expert witness was not present and did not testify at the March hearing.

¶6        Although the court recognized it was unable to either close the record or terminate Father's rights without the ICWA expert witness testimony, the court made findings of fact on the record.  Specifically, it

---

[2]       The location of the children's mother is unknown.

[3]       On February 12, 2018, Father signed a "Form 3 Notice" acknowledging that failure to appear at a scheduled hearing may result in the proceedings going forward in his absence and the court terminating his parental rights.

found DCS had sufficiently proved the required state statutory grounds for termination, including the best interests of the children. In addition, the court found that Father's absence deemed him to have "admitted the allegations in the [p]etition." A subsequent hearing to take the ICWA testimony was set for the following month. After the March hearing, Father filed a motion for reconsideration as to the court's ruling to convert the initial hearing due to his failure to show good cause. The court denied the motion.

¶7        Father appeared for the April hearing. At the beginning of the hearing, Father's attorney requested the court allow Father to testify concerning his ability to parent, but the court denied her request. The court held that Father waived his rights to testify as to any information relating to its statutory grounds for termination and best-interests findings, and Father's testimony would be allowed only as to the unresolved federal ICWA requirements. Father's attorney maintained that the April hearing was simply a continuation of the initial termination hearing—not an accelerated adjudication hearing—and Father still had a right to offer testimony regarding the statutory grounds for termination and the best interests of the children. The court disagreed and proceeded to hear testimony from DCS' ICWA expert witness.

¶8        On May 25, 2018, the court issued an order terminating Father's parental rights. The court restated its earlier finding that Father had a chronic substance abuse problem that prevented him from "exercising proper and effective parental care and control" for the children. In addition, the court reiterated its finding that termination of Father's parental rights was in the best interests of the children because it would facilitate their opportunity for adoption. As required under ICWA, the court also found that active efforts had been made to keep the family together but were unsuccessful, and that continued custody of the children by Father would likely result in serious emotional or physical harm to the children.

¶9        Father timely appealed the juvenile court's order. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution; Arizona Revised Statutes ("A.R.S.") section 8-235(A); and Arizona Rule of Procedure for the Juvenile Court 103(A).

## ANALYSIS

¶10       "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz.

279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). These rights are not absolute, and the termination of parental rights may occur under certain circumstances. *Id.* When adjudicating the termination of parental rights, a court must ensure parents receive "fundamentally fair procedures" pursuant to the Due Process Clause of the Fourteenth Amendment. *See id.*

**¶11** Juvenile court proceedings operate differently than other civil trial courts. *See David G. v. Pollard*, 207 Ariz. 308, 312-13, ¶¶ 21-24 (2004). The court has flexibility to achieve what is in a child's best interests. *See id.* at 313, ¶ 22. In doing so, the court often must strike a balance between "respect[ing] the informality and flexibility that characterize juvenile proceedings" and "ensur[ing] that such proceedings comport with the fundamental fairness demanded by the Due Process Clause." *Id.* at ¶ 24 (internal quotation omitted). Even though the court has broad discretion in conducting proceedings to terminate parental rights, the proceeding must not be "devoid of any of the attributes customarily ascribed to procedural due process and fairness." *In re Juvenile Action No. J-75482*, 111 Ariz. 588, 596 (1975) (Struckmeyer, J., concurring); *see also Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 21 (App. 2012) ("[T]he legislature has imposed significant procedural safeguards to ensure due process [at termination proceedings].").

**¶12** Father argues the juvenile court violated his procedural due process rights by converting the March initial hearing into an accelerated termination adjudication hearing and in limiting his testimony at the April hearing. We review each issue separately.

*I.* *The Court Properly Exercised Its Discretion in Converting the Initial Hearing to a Termination Adjudication Hearing*

**¶13** Father asserts that at the March hearing his attorney was prepared to enter a denial on his behalf regarding the allegations in the motion for termination, but the court erroneously refused to allow Father's attorney to do so. Instead, at the request of DCS and the GAL, the court accelerated the process and conducted what Father characterizes as a "drive-by" termination adjudication hearing—even though the court knew DCS was not prepared to present its case. DCS argues Father had notice of the initial hearing before he failed to appear, and the court correctly exercised its discretion under the Arizona Rules of Procedure for the Juvenile Court when it converted the hearing. We review the interpretation of court rules *de novo*. *Brenda D.*, 243 Ariz. at 442, ¶ 15 (citation omitted).

**¶14**      If after proper notice a parent fails to appear at an initial hearing, Rules 64(C) and 65(C)(6)(c) authorize the juvenile court to convert the initial termination hearing into a termination adjudication hearing. *Trisha A. v. Dep't of Child Safety*, 245 Ariz. 24, 31-32, ¶ 20 (App. 2018). After determining that DCS has met its burden of proof, the court may then terminate a parent's rights *in absentia. Id.* This court recently discussed the drawbacks of accelerated adjudication hearings in *Trisha A. Id.* at 32, ¶ 21. In doing so, we observed that counsel for parents are often ill prepared at such an accelerated hearing because they are surprised by the parent's failure to appear. *Id.* Although we ultimately concluded that the juvenile court's decision to convert various preliminary hearings into termination adjudication hearings is discretionary, we advised that a better practice may be "to rule only that the parent has waived participation at the missed pretrial proceeding, and allow the severance issue to proceed to the final adjudication hearing as scheduled." *Id.* at 34, ¶ 31.

**¶15**      Here, the court found Father received proper notice for the March hearing and did not have good cause for his failure to appear. As such, the court found that Father had admitted the allegations of the DCS motion and waived his right to participate in the hearing. Having exercised that discretion, the court then heard testimony from a DCS representative as to the statutory basis for termination and the best interests of the children. Although the court did not formally state on the record that the initial hearing was being converted into an accelerated adjudication hearing, the court had the authority to do so pursuant to Rule 65(C)(6)(c). We continue to believe that the better practice would have been for the court to deem Father's rights waived as to the initial hearing and allow the termination adjudication hearing to proceed on schedule.[4] *See Trisha A.*, 245 Ariz. at 34, ¶ 31. Nonetheless, we recognize the legislature has also vested the juvenile court with discretion to convert the hearings as it sees fit—as long as parents receive adequate notice and are represented by counsel at the hearing. *See* A.R.S. § 8-863(C); *Brenda D.*, 243 Ariz. at 446, ¶ 30. Here, Father's attorney was present for the entire March hearing, and she cross-examined DCS' witness. But because of Father's unanticipated absence, Father's attorney was not in a position to present any affirmative evidence on Father's behalf. On this record, the court did not abuse its discretion or otherwise violate Father's due process rights when it proceeded with the

---

[4]      A termination adjudication hearing must be held "no later than ninety (90) days after the permanency hearing." Ariz. R.P. Juv. Ct. 66(B). A permanency hearing for the children was held on February 12, 2018, so the court had until May 14, 2018 to hold the termination adjudication hearing.

accelerated adjudication hearing after Father failed to appear for the scheduled initial hearing.

> II. *The Bifurcated Accelerated Adjudication Hearing*
>
> A. *The Court Violated Father's Due Process Rights by Limiting His Ability to Testify at the April Hearing*

**¶16** Father next argues the court improperly refused to allow him to testify at the April hearing even though DCS had not finished presenting its case-in-chief. Although the court accepted a brief offer of proof from Father's attorney regarding his current status, the court did not allow Father to take the stand and offer his own testimony on any non-ICWA related issue. Father's attorney argued before the court that Father had a "right to be able to present evidence on what's in the best interests of [his] children," but the court disagreed.[5] The court explained it had already determined that DCS met its burden of proof relative to all of the statutory grounds for termination, including best interests. On appeal, Father cites *Brenda D.* to support his argument.

**¶17** DCS also cites to *Brenda D.* and argues Father "waived his rights to be present, to participate, and to testify" regarding any of the statutory grounds for termination or best-interests findings.

**¶18** In *Brenda D.*, our Supreme Court addressed how Rules 64(C) and 65(C)(6)(c) "apply when a parent, without good cause, appears late for a termination adjudication hearing, after the juvenile court has already found [a] waiver" of the parent's right to participate at the hearing. *Brenda D.*, 243 Ariz. at 440, ¶ 1. Our Supreme Court determined:

> [I]f a parent appears late for a hearing, but at a stage of the proceedings where an opportunity to contest and present evidence still exists, *it would be an abuse of the juvenile court's discretion to impose the full-waiver sanctions, including finding a waiver of the parent's right to contest the factual allegations in the motion.* But the court's earlier finding of waiver remains effective as to the portions of the hearing during which the parent was absent, and the court need not start the hearing

---

[5] "Though Father did not object with the magic words of due process, he implicitly raised the same arguments below that he now presents on [appeal] and therefore adequately preserved the issue for our review." *Volk v. Brame*, 235 Ariz. 462, 469 n.6, ¶ 22 (App. 2014) (internal quotation omitted).

over or provide an opportunity for re-examining witnesses
with the parent present.

*Id.* at 444-45, ¶ 25 (emphasis added). This is a close question but applying the holding in *Brenda D.* and recognizing the fundamental rights at stake, we conclude the juvenile court abused its discretion and violated Father's due process rights at the April hearing.

**¶19** Rule 66 outlines the procedures required to conduct an accelerated adjudication hearing. *See* Ariz. R.P. Juv. Ct. 65(C)(6)(c) (stating an initial hearing that has been converted to a termination adjudication hearing must be conducted in accordance with Rule 66). Recognizing that the juvenile court system operates in a distinct manner, Rule 66(D) allows the court flexibility to proceed "as informal as the requirements of due process and fairness permit." Nevertheless, Rule 66(D) requires an accelerated adjudication hearing have some semblance of structure "similar to the trial of a civil action before the court without a jury." Significant to this case, Rule 66(F)(2) also requires that a court wait until after the conclusion of the entire termination adjudication hearing before weighing the evidence and making its findings of fact in support of terminating parental rights.

**¶20** In a typical civil bench trial, the plaintiff (here, DCS) presents its case first and offers evidence relevant to all the requisite elements of their cause of action. After the plaintiff rests, the defendant (here, Father) presents his case in the same manner. In this case, the court weighed evidence and made findings of fact on the record at the March hearing knowing that DCS had not finished presenting its case-in-chief — discounting the chance that Father would appear at the continuation of the termination hearing. In doing so, the court erroneously bifurcated the hearing into a state law portion and a federal law portion, thereby violating Rule 66(D) and (F).

**¶21** We agree with DCS that, under *Brenda D.*, the court had discretion to determine that Father waived his rights to re-examine the DCS case representative. Nevertheless, we conclude Father still had the right to present his own independent testimony as a witness at the April hearing. Because Father appeared before the close of the accelerated adjudication hearing, he did not waive his right to participate from that point forward, and the court's finding of waiver as to all allegations in the DCS motion was premature. *See Brenda D.*, 243 Ariz. at 444, ¶ 24. If the hearing was supposed to be conducted similar to a civil bench trial, then Father still had a right to be heard after DCS finished presenting its case. *See In re Estate of*

*Snure*, 234 Ariz. 203, 204, ¶ 6 (App. 2014) ("A person facing a potential state deprivation of life, liberty, or property is entitled to due process of law," and an essential component of due process is the "opportunity to be heard."). Allowing the court to bifurcate a termination adjudication trial into state and federal issues and provide separate findings in that regard would render Rule 66(F)(2) meaningless, and "[w]e will not interpret statutes or rules in a manner that renders portions of their text superfluous." *See Brenda D.*, 243 Ariz. at 443, ¶ 20 (citation omitted).

**¶22** We recognize a trial court in a civil action generally has broad discretion in determining when to bifurcate a trial. *See* Ariz. R. Civ. P. 42(b). However, Rule 66(F)(2) expressly limits this discretion in the context of juvenile court proceedings. Our Supreme Court explained in *Kent K.*, that our juvenile court procedures are different than other states' procedures because "Arizona does not explicitly bifurcate its termination proceedings." *Kent K.*, 210 Ariz. at 286, ¶ 32. Instead, Arizona "considers the separate inquiries required under section 8-533.B in a single hearing." *Id.* Following *Kent K.*, if we are to afford parents of both native and non-native children the same procedural due process under the law, the fact-finding stage in a termination adjudication hearing must be conducted after the presentation of all the evidence—including ICWA.

**¶23** In this setting, reading the various Arizona Supreme Court cases and procedural rules in harmony, the April session was simply a continuation of the March accelerated adjudication hearing, and the juvenile court should have allowed Father to present any additional evidence—including his testimony on the best-interests issue—after DCS had completed its case-in-chief. Indeed, much of the required findings under ICWA overlap with the factors used by the court to determine the best interests of a child under A.R.S. § 8-533(B). *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). Given the nature of the best-interests inquiry, the court should have heard Father's testimony before making its ultimate determination. Notwithstanding the statutory grounds for termination having been established, the possibility remained that Father's current circumstances may have mitigated the court's consideration of those deficiencies and his testimony would clearly be relevant for the court's ultimate determination as to the best-interests issue.

### B. The Dissent

**¶24** Our dissenting colleague concludes that Father's due process rights were satisfied because the court accepted his attorney's brief offer of proof. We recognize the juvenile court operates in a unique, and of

necessity, a somewhat flexible manner; however, to the extent our Supreme Court and the Arizona Rules of Procedure for the Juvenile Court provide a framework for conducting accelerated termination adjudication proceedings, the juvenile court must adhere to that framework to ensure parents have an adequate opportunity to contest the termination of their parental rights.

**¶25**         Respectfully, the dissent's reliance on a "clearly erroneous" standard of review, as outlined in *Alma S.*, is misplaced. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶¶ 17-18 (2018). There, our Supreme Court addressed the appellant's argument that insufficient evidence supported the juvenile court's order. *Id.* The appellant's challenge led the court to analyze the sufficiency of the evidence supporting the juvenile court's decision, and the Supreme Court stated it would "affirm the severance order unless it [was] clearly erroneous." *Id.* Here, Father is challenging the procedure afforded to him at his accelerated termination adjudication hearing. Thus, the sufficiency of evidence mounted against Father's position on the merits has no bearing on his ability to offer his own testimony and have that testimony be "meaningfully" considered as a part of the court's best-interests findings. *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) ("[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions.") (quoting *Carey v. Piphus*, 435 U.S. 247 (1978)); *see also Fuentes v. Shevin*, 407 U.S. 67, 87 (1972) ("The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing.").

**¶26**         Next, the dissent recognizes that the juvenile court impermissibly weighed the evidence and made findings of fact at the March hearing but asserts the procedures in this case did not introduce a "constitutionally impermissible risk of erroneous deprivation of Father's parental rights" in violation of *Mathews v. Eldridge*, 424 U.S. 319 (1976). We disagree.

**¶27**         The risk was present because, unlike the dissent's assertion that Father's attorney admitted the allegations in the petition, Father's late appearance meant he did not admit the allegations in the petition, and the hearing remained a contested action. *See Brenda D.*, 243 Ariz. at 444, ¶ 25. This court has previously held "[d]ue process requires that when there are disputed issues of fact as to a child's best interests, 'the court must allow

the parties to present evidence before it makes its finding.'" [6] *Cruz v. Garcia*, 240 Ariz. 233, 237, ¶ 16 (App. 2016) (citing *Murray v. Murray*, 239 Ariz. 174, 179, ¶ 18 (App. 2016)); *cf. In re Kory L.*, 194 Ariz. 215, 219-20, ¶¶ 11-15 (App. 1999) (holding a mother's procedural due process rights were violated when the juvenile court held a restitution hearing and ordered her to pay restitution on her son's behalf without allowing her an opportunity to contest the amount of the restitution).

¶28        The record shows that the court weighed the evidence and made its findings of fact and conclusions of law before the end of the initial hearing and simply reiterated those findings in the termination order. Allowing Father's attorney to submit an offer of proof at the April hearing did not provide a substantive cure to the premature findings—as offers of proof cannot be considered evidence used to support a finding of fact or conclusion of law.  *See State v. Towery*, 186 Ariz. 168, 178-79 (1996) (explaining an offer of proof is not a proper method to submit admissible evidence to the trial court, but instead its purpose is to show "with reasonable specificity what the evidence would have shown" so that an appellate court can have an understanding of whether the trial court erred in excluding the evidence); *see also Molloy v. Molloy*, 158 Ariz. 64, 68 (App. 1988) (explaining that offers of proof in a civil matter "serve the dual function of enabling the trial court to appreciate the context and consequences of an evidentiary ruling and enabling the appellate court to determine whether [the exclusion of the evidence] was harmful").  Even if it wanted to adopt different findings, the court could not have used the offer of proof as a basis to change its best-interests finding, and therefore did not give Father a chance to "meaningfully" present evidence for the best interests of his children.

¶29        The United States Supreme Court has made clear "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."

---

[6]        The dissent argues Father's attorney had a chance to offer evidence of Father and the children's "strong bond" at the March hearing but chose not to do so.  Contrary to this argument, the record shows, and the dissent quotes, that Father's attorney directed the court to the pre-hearing reports as support for Father's position on the best interests of the children.  The pre-hearing reports both identified the strong bond Father had with the children.  Nonetheless, this evidence has no bearing on Father's right to testify on the best-interests issue, and the court's deviation from the procedural rules prevented Father from properly offering that testimony before the best-interests finding was made.

*Eldridge*, 424 U.S. at 344.  Allowing the juvenile court to weigh evidence and make findings before the conclusion of a severance hearing unreasonably puts parents at risk of an "erroneous deprivation" of their parental rights— particularly in ICWA cases where more evidence must be produced to allow termination of parental rights.  In addition, not allowing a parent who appears before the end of an accelerated adjudication hearing the opportunity to testify before severing their parental rights greatly increases the chance the juvenile court will produce unjustified determinations regarding a child's best interests.  *See Murray*, 239 Ariz. at 179, ¶ 18 ("[W]hen contested, a best-interests finding must be based on evidence, not argument.").

**¶30**        Given the classification of parental rights as a fundamental liberty interest, *Santosky*, 455 U.S. at 753, and the potential irrevocable harm that might be caused to a child by severing parental rights in such a fast-tracked fashion as an accelerated adjudication hearing, the juvenile court's *de facto* bifurcation of Father's accelerated adjudication hearing did not provide Father with the fundamentally fair procedure that due process requires.  If the opportunity to be "meaningfully heard" is to have any real place in the context of accelerated termination adjudication proceedings, the juvenile court must adhere to the procedural requirements outlined in the Arizona Rules of Procedure for the Juvenile Court and by our Supreme Court.  Such guideposts are in place to protect a parent's fundamental right to care for their children.  *See Lassiter v. Dep't of Soc. Serv. of Durham Cty.*, 452 U.S. 18, 27 (1981) ("[A] parent's desire for and right to the companionship, care, custody and management of his or her children is an important interest . . . [and]  a parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore a commanding one.") (internal quotation omitted).

## CONCLUSION[7]

**¶31**        Because an essential component of due process is the opportunity to be "meaningfully heard," we conclude the court committed a due process violation by, in essence, adjudicating the state and federal

---

[7]        Father also contends that the juvenile court erred by hearing testimony from an unqualified expert witness and that DCS failed to present sufficient evidence to support the court's best-interests finding. Because we vacate and remand the decision of the juvenile court, we do not address these other issues raised by Father. *See Schwab v. Matley*, 164 Ariz. 421, 422 (1990) (stating where one issue is dispositive, a court need not reach other issues presented on appeal).

termination requirements in a bifurcated fashion. In doing so, the juvenile court impermissibly limited Father's ability to testify or otherwise participate at the April hearing.

¶32 In holding that Father's due process rights were violated, we do not address whether DCS in fact presented sufficient evidence to support the termination of Father's parental rights. It may be the case that on remand the juvenile court reaches the same conclusion. Nevertheless, sitting as a court of review, it is our duty to ensure all parents are afforded their constitutional rights in the severance process.

¶33 Therefore, we vacate the juvenile court's order terminating Father's parental rights and remand for a new termination adjudication hearing consistent with this decision.

**P E R K I N S**, J., concurring in part and dissenting in part:

¶34 I concur in part and respectfully dissent in part. I agree with the majority's analysis in part I that, while not the best practice, it was within the juvenile court's discretion to accelerate the March hearing. With regard to part II, however, two concerns lead me to disagree with the majority's conclusion that the juvenile court failed to afford Father due process. First, the court cured any due process issues when it entertained Father's offer of proof. Second, it was within the juvenile court's discretion to *de facto* bifurcate the proceeding. I therefore respectfully dissent from part II of the majority's analysis.

¶35 Due process demands "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the actions and afford them an opportunity to present their objections." *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *see also* U.S. Const. amend. V, IX, XIV § 1; Ariz. Const. Art. 2 §§ 4, 33; *Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 208, ¶ 10 (App. 2016); *In re Appeal in Maricopa Cty. Juv. Action No. JS-734*, 25 Ariz. App. 333, 339 (1975). In determining whether the juvenile court provided due process, Arizona courts apply the familiar framework from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Kent K.*, 210 Ariz. at 286, ¶ 33; *see also Samiuddin v. Nothwehr*, 243 Ariz. 204, 211, ¶ 20 (2017); *Dep't of Child Safety v. Beene*, 235 Ariz. 300, 304–08, ¶¶ 10–20 (App. 2014). The dispositive question for us under *Eldridge* turns on the extent to which the procedure presents the risk of erroneous deprivation of Father's rights. We

review constitutional issues de novo, *Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 55, ¶ 12 (2017), but view the facts "in the light most favorable to upholding the juvenile court's order." *Brenda D.*, 243 Ariz. at 447, ¶ 35 (quoting *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

**¶36** In this case and under the facts presented, I cannot say the juvenile court's procedure introduced a constitutionally impermissible risk of erroneous deprivation of Father's parental rights.

**¶37** At the March hearing, Father was represented by counsel who cross-examined the State's witnesses, and the juvenile court allowed Father's counsel to present a case. *Brenda D.*, 243 Ariz. at 446, ¶¶ 30–31. Near the end of the hearing, Father's counsel admitted the allegations in the petition:

> THE COURT: . . . the State grounds need to be proved by a clear and convincing. The stepped-up burden is for ICWA testimony. Any comment, [Father's counsel]?
>
> [Father's counsel]: Your Honor, we don't have any ICWA testimony today.
>
> THE COURT: Understood. I'm just saying for the State grounds. Any comment?
>
> [Father's counsel]: I do not. *I think the report establishes those.*

(Emphasis added). The juvenile court then made the following findings: that it had jurisdiction; that the State met its burden in proving the 15 months' time in care ground; that the State met its burden in proving the history of chronic drug or alcohol abuse ground; and that termination of parental rights would be in the children's best interests. After making these findings on the record, the juvenile court set the date for the April hearing to take ICWA testimony. At the conclusion of the March hearing, the juvenile court entered its findings in an unsigned minute entry.

**¶38** Father's counsel could have presented argument at the March hearing that Father had a strong bond with the children and, because of that fact, termination of his parental rights may not have been in the children's best interests. On November 20, 2017, the children's attorney wrote to the court:

> As counsel for the minors, I want to emphasize that I cannot support a plan that would cut off the relationship between these minors and their father. Frankly, that position is the same even if I look at my role as being guardian ad litem. *These children are greatly bonded to their father and cutting him completely out of their lives is not what they want and is likewise not in their best interests.*

(Emphasis added). The children's attorney attended the March hearing, and the court explicitly offered Father's counsel the opportunity to present an argument, yet neither offered any evidence or argument to refute DCS's case on the children's best interests. *See* Ariz. R.P. Juv. Ct. 40.1(C); 40.2(E).

¶39          At the April hearing, Father was once again represented by counsel who cross-examined the State's witness. Though it limited Father's testimony to ICWA, the juvenile court allowed Father's counsel to enter the following offer of proof:

> I will let the Court know, in the form of an offer of proof, that father has moved in with a treatment sober community . . .. He has indicated there is a family room available, and he believes that this program will help maintain sobriety and will help him with the children. There are other adults there – obviously they would need background checks by DCS – but there are other adults who would be willing to supervise the children. Two of the other persons are present today.

> That would be the substance of his testimony. And it would be our position that it would be in the best interests of the children to try that, before we go to the ultimate, essentially losing the father for these children.

The court then heard argument on whether it should accept the offer of proof, after which the court stated, "I will consider your offer of proof. Was there anything you wanted to add to it?" Father's counsel then added that Father has a strong bond with the children, and that breaking that bond would be detrimental to the children. The court again entered findings of fact in an unsigned minute entry at the conclusion of the hearing.

¶40          In my opinion, the juvenile court met its due process requirements because it gave Father the opportunity to make a substantive offer of proof for his proposed testimony on the statutory grounds. *See, e.g., Eldridge*, 424 U.S. at 333 (due process requires opportunity to be heard at a meaningful time and in a meaningful manner); *Carroll v. Robinson*, 178 Ariz.

453, 461 (App. 1994) ("At a minimum, due process requires notice and a hearing where the individual has a meaningful opportunity to confront the evidence against him.") (quoting *Brady v. Gebbie*, 859 F.2d 1543, 1554 (9th Cir. 1988)). The court accepted and considered Father's substantive offer of proof before it terminated his parental rights. I believe that a substantive offer of proof is a meaningful manner in which to be heard, and that the time prior to the termination of one's parental rights is a meaningful time at which to be heard. *See* A.R.S. § 8-537(A) (court shall hold a hearing in a contested termination proceeding).

**¶41** The substance of Father's offer of proof was meaningful because it went towards the state statutory grounds. In February 2016, DCS removed the children from Father and filed a dependency petition on the grounds that Father neglected the children due to substance abuse. In February 2018, DCS moved to terminate Father's parental rights on the grounds of fifteen months' time in care and inability to discharge parental responsibilities due to chronic substance abuse. Father's offer of proof stated that he was living in a sober community, which has more to do with whether his alcoholism "will continue for a prolonged indeterminate period," or whether he can remedy the circumstances that brought the children into dependency, A.R.S. § 8-533(B)(3), (B)(8)(c), than it does with the provision of remedial services or "serious emotional or physical damage to the child[ren]," 25 U.S.C. § 1912(d), (f). Because the court considered the substance of Father's proof at the April hearing, I cannot agree that it violated his due process rights.

**¶42** Contrary to the majority's assertion, *supra* ¶ 26, I do not concede that the juvenile court violated Rule 66(F) by making findings of fact when it entered its minute entries. The rule states that "[a]ll findings and orders shall be in the form of a signed order or set forth in a *signed* minute entry." Rule 66(F) (emphasis added). The court did not sign either of the minute entries concerned here, so by its own plain language Rule 66(F) does not control. Instead, I think the findings in the minute entries should be considered preliminary findings, subject to change until the court adopted its final, signed, appealable order. *See* Ariz. R.P. Juv. Ct. 104(A); *cf.* Rule 66(D)(2); *Brenda D.*, 243 Ariz. at 443–44, ¶¶ 19–20, 22; *accord* Ariz. R. Civ. P. 52(b), (c); *Catalina Foothills Unified School Dist. No. 16 v. La Paloma Prop. Owners Ass'n, Inc.*, 229 Ariz. 525, 529–30, ¶¶ 12–14 (App. 2012). The majority does not suggest the juvenile court could not adopt different findings in its final order than it had preliminarily set forth in its unsigned minute entries. If the court could have adopted different findings of fact after considering Father's offer of proof, I do not see the entry of preliminary findings as violative of due process.

¶43        Nor do I assert that Father waived his ability to contest the termination because he arrived late. *See supra* ¶ 27. First, as noted *infra* ¶ 49, I do not suggest the juvenile court engaged in best practices in this case, but merely that it afforded Father the minimum process due to him. Second, I believe the juvenile court complied with the mandate from *Brenda D.* that Father's waiver was "effective only for the portion of the hearing during which [Father] was absent," and that "the waiver end[ed] upon [Father's] appearance." 243 Ariz. at 444, ¶ 24. The juvenile court allowed Father to testify as to the ICWA factors, the only issue for which Father appeared, and entertained Father's offer of proof on the statutory grounds, an issue on which it heard evidence prior to Father's arrival. Further, and consistent with the majority's concerns expressed *supra* ¶ 29, due to the applicability of ICWA, Father received more process in this case than he would have otherwise. Given the facts of this case, the majority does not dispute that the juvenile court would have been within its discretion to terminate Father's parental rights at the end of the March hearing had Father's children not been subject to ICWA. *Compare* A.R.S. § 8-533 *with* 25 U.S.C. § 1912; *Brenda D.,* 243 Ariz. at 444, ¶ 24 (parent deemed to have admitted all allegations in petition only if absent through entire hearing). To put it succinctly, we agree that due process would not require the court to consider Father's offer of proof in a non-ICWA case that was otherwise identical.

¶44        In any event, the presence of the offer of proof allows us "to determine whether any error was harmful." *Horan v. Indus. Comm'n of Ariz.*, 167 Ariz. 322, 325 (1991) (quoting *Molloy*, 158 Ariz. at 68). The substance of Father's offer of proof is legally insufficient to overcome the clear and convincing evidence adduced by DCS because, during the children's out of home placement for over two years, Father had been in and out of treatment and relapse. We are bound to "affirm a severance order unless it is clearly erroneous." *Alma S.*, 245 Ariz. at 151, ¶ 18 (quoting *Demetrius L.*, 239 Ariz. at 3, ¶ 9). "A finding is clearly erroneous if no reasonable evidence supports it." *In re B.S.*, 205 Ariz. 611, 614, ¶ 5 (App. 2003) (citation omitted).

¶45        The juvenile court may terminate a parent's rights if it finds, by clear and convincing evidence, that "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of . . . alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate time." A.R.S. § 8-533(B)(3). This court has held that the history of substance abuse need not be "constant, which is invariable and uniform," but rather that it be inveterate and long-lasting. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010) (citation omitted). Further, in determining whether a parent's chronic

17

drug or alcohol abuse will continue for a prolonged indeterminate time, the child's interest in permanency takes precedence over a parent's "uncertain battle with drugs." *Id.* at 379, ¶ 29 (quoting *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998)). In other words, when it comes to a parent's substance abuse, "children should not be forced to wait for their parent to grow up." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) (quoting *Raymond F.*, 224 Ariz. at 378, ¶ 25).

¶46 Here, reasonable evidence supports the conclusions that Father is unable discharge his parental responsibilities because of his chronic history of alcohol abuse and that Father's alcohol abuse will continue for a prolonged indeterminate period. Father and the majority do not dispute this. *See infra* ¶ 25. Further, the substance of Father's offer of proof does not undercut DCS's evidence in any legally relevant manner. That Father spent two months in a sober living facility may show that his alcohol abuse was not constant, but it does not refute that his alcohol abuse was long-lasting, and it does not show that his alcohol abuse will abate in the foreseeable future.

¶47 DCS first filed a dependency petition in February 2015, alleging that it removed the children from Father's care because police arrested Father for driving while intoxicated with the children in the car. Father then successfully engaged in counseling and drug testing, and DCS returned the children to his care. The juvenile court—through the same judge *pro tempore* who ultimately terminated Father's parental rights—dismissed that dependency in January 2016. In February 2016, DCS petitioned the court for another dependency, this time alleging that it removed the children from Father's care because police arrested Father for disturbing the peace after he drunkenly tried to start a fight outside of a healthcare facility. DCS then provided Father with intensive outpatient classes and urinalysis testing. Despite Father apparently suffering another relapse in August 2016, DCS still remained hopeful that it could return the children to Father because he had entered an inpatient alcohol abuse treatment program. Unfortunately, DCS had to push back the planned reunification, and cancel overnight visitation, after Father disclosed he had had another relapse in February 2017. After this, police again arrested Father for public intoxication and disorderly conduct in April 2017, and he was apparently incarcerated for 60 days thereafter. Father's probation then required him to live in a child-free sober house for at least six months. Furthermore, the CASA stated that Father had 26 alcohol-fueled contacts with police between 2008 and 2014.

¶48    The evidence in the record reasonably supports the juvenile court's conclusions and there is no suggestion that contrary evidence exists. Father's troubles with alcohol began at least by 2008 and continued at least until his arrest in April 2017. Reasonable evidence thus supports that Father has a history of chronic alcohol abuse. DCS removed Father's children for alcohol-related reasons in both 2015 and 2016. DCS once removed the children after Father was arrested for DUI with the children in the car and once after Father failed to pick the children up from school because he was in jail on an alcohol-related charge. These events reasonably support the conclusion that Father cannot adequately discharge his parental responsibilities due to alcohol abuse. And, despite successfully completing several alcohol counseling programs, including inpatient treatment, Father was unable to prevent a relapse over 14 months after DCS removed his children for the second time. This reasonably supports the conclusion that Father's alcohol abuse will continue for a prolonged indeterminate time. Given this record, I believe reasonable evidence supports termination of Father's rights under the ground of chronic substance abuse. *See Raymond F.*, 224 Ariz. at 379, ¶ 29 ("Father's temporary abstinence from drugs and alcohol does not outweigh his significant history of abuse or his consistent inability to abstain during this case."). The record also supports the court's conclusion that the children are adoptable and termination would benefit them by furthering adoption plans. *See* A.R.S. § 8-102(A); *Alma S.*, 245 Ariz. at 150–51, ¶¶ 12–16.

¶49    To be clear, while I think that the juvenile court afforded Father minimally adequate due process, I do not believe the juvenile court engaged best practices in this case. It is within the juvenile court's discretion to find that a parent has waived his or her rights, at least until the parent attends the hearing. *See* A.R.S. § 8-537(C) ("the court . . . may find that the parent has waived the parent's legal rights"); § 8-863(C) ("the court . . . may find that the parent has waived the parent's legal rights"); *Brenda D.*, 243 Ariz. at 443–45, ¶¶ 19–20, 22–25; Rule 64(C) ("may result in a finding that the parent . . . waived legal rights"); 65(C)(6)(c) ("hearing could go forward in the absence of the parent . . . and that failure to appear may constitute a waiver of rights"); 66(D)(2) ("failure to appear may constitute a waiver of rights . . . the court may terminate parental rights based upon the record and evidence presented"). The relevant rules and statutes do not make the "juvenile court's discretionary, front-end finding of waiver irrevocable," and it is an abuse of discretion for the juvenile court to "impose full-waiver sanctions" when the parent appears for some part of the hearing. *Brenda D.*, 243 Ariz. at 444–45, ¶ 25. With the procedural posture in this case, I think it would have been better practice to let Father testify at the April hearing on any matter relevant to the termination. *See Brenda D.*, 243 Ariz. at 448–49, ¶

42 ("In that scenario, testimony and other evidence admitted before the parent's late arrival need not be repeated. But, absent extraordinary circumstances, the court should permit the tardy parent to testify and present other available evidence if the parent so chooses."). As explained above, however, I disagree with the majority that the court's failure to do so violated Father's constitutional rights.

¶50 In sum, I believe the juvenile court avoided violating Father's due process rights when it heard his offer of proof regarding the state statutory termination grounds. Under the *Eldridge* framework, entry of the offer of proof alleviated the risk that the court would erroneously deprive Father of his fundamental right to parent. The offer of proof also allows this court to determine whether Father suffered harm from any potential error; I believe he did not. That said, I do not take waiver of constitutional rights lightly, and suggest that the better practice is to err on the side of hearing more parental testimony, not less. For these reasons, I find it unnecessary to construe Rule 66(F) and therefore respectfully dissent from part II of the majority's analysis.



AMY M. WOOD • Clerk of the Court
FILED: AA